IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS

**April M. Caraway**                                                                                                **Plaintiff**

v.                                      **CASE NO. 2:14CV00043 JTK**

**Carolyn W. Colvin, Acting Commissioner,**
**Social Security Administration**                                                                                **Defendant**

<u>**ORDER AFFIRMING THE COMMISSIONER**</u>

April M. Caraway seeks judicial review of the denial of her application for disability insurance benefits (DIB) and supplemental security income (SSI). April last worked in 2005 as a certified nurse's assistant.[1] Caraway applied for DIB on April 22, 2011 and SSI on May 3, 2011, with an alleged onset date of November 20, 2005.[2,3] Caraway's date last insured (DLI) is December 31, 2010.[4] Caraway bases disability on hip disease, joint pain, knee pain, high blood pressure, diabetes, mild depression, and arthritis.[5]

**The Commissioner's decision.** The Commissioner's ALJ determined that Caraway has not engaged in substantial gainful activity since the alleged onset date.[6] Caraway has severe impairments - Legg-Perthes disease with residual hip deformity, obesity, depression, diabetes

---

[1] SSA record at pp. 47-48.

[2] *Id.* at p. 142.

[3] *Id.* at p. 151.

[4] *Id.* at p. 172.

[5] *Id.* at p. 165.

[6] *Id.* at p. 24.

1

mellitus and hypertension.[7] None of Caraway's severe impairments meet the listings, and Caraway can perform sedentary work except she can only sit up to six hours in an eight hour workday, stand/walk up to two hours, lift/carry up to ten pounds occasionally, and needs to change position from sitting to standing or standing to sitting every hour.[8] The ALJ held that Caraway cannot perform any past relevant work,[9] but there are positions available in significant numbers in the national economy that Caraway can perform - document preparer and charge account clerk.[10] Caraway's application was denied.[11]

After the Commissioner's Appeals Council denied a request for review, the ALJ's decision became a final decision for judicial review.[12] Caraway filed this case to challenge the decision. In reviewing the decision, the Court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[13]

---

[7]*Id.*

[8]*Id.* at pp. 24-26.

[9]*Id.* at p. 29.

[10]*Id.* at p. 30.

[11]*Id.*

[12]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating, "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that the appeal procedure permits claimants to appeal only final decisions).

[13]*See* 42 U.S.C. § 405(g) (requiring the district court to determine whether the Commissioner's findings are supported by substantial evidence and whether the Commissioner conformed with applicable regulations); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny any applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

Substantial evidence is "less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion."[14] For substantial evidence to exist in this case, a reasonable mind must accept the evidence as adequate to support the ALJ's denial of benefits.[15]

**Caraway's allegations.** Caraway argues that the decision is not supported by substantial evidence because (1) the ALJ did not properly consider the opinion of the treating physician; and (2) the ALJ erred in the credibility determination.

**Treating physician.** Caraway maintains that the ALJ did not properly consider the Medical Source Statement of her treating physician with respect to the RFC determination. The Statement, however, was not submitted until more than a year after the ALJ rendered her decision.[16] Therefore, it was not possible for the ALJ to consider this opinion.

Caraway submitted the Statement following her request for a review by the Appeals Council.[17] The Appeals Council denied Caraway's request for review on February 4, 2014, noting that it considered the Medical Source Statement.[18] "Where, as here, the Appeals Council considers new evidence but denies review, [the court] must determine whether the ALJ's decision was supported by substantial evidence on the record as a whole, including the new evidence."[19] Even with the additional evidence, the ALJ's RFC determination is supported by

---

[14] *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010) (internal quotations and citations omitted).

[15] *Britton v. Sullivan*, 908 F.2d 328, 330 (8th Cir. 1990).

[16] SSA record at p. 395.

[17] *Id.* at pp. 14 & 395.

[18] *Id.* at pp. 1-2.

[19] *Davidson v. Astrue*, 501 F.3d 987, 990 (8th Cir. 2007).

substantial evidence. The limited amount of treatment notes, observations contained in the treatment notes, conservative treatments prescribed, state agency opinions, and evidence of daily activities all support the assigned RFC.

What is perhaps most striking is the limited amount of medical evidence in the record. Although Caraway alleges disability based on seven impairments, the record contains treatment notes from less than twenty separate occasions. Nine of those notes are from doctor visits in the 1980s.[20] The remaining notes are spread over a large period of time - 2005 to 2012.[21] The small number of treatment notes weighs against a finding of disability because it establishes that Caraway only sought episodic care.[22]

The treatment notes from the 1980s concern Caraway's hip impairment. In 1985 Caraway was diagnosed with Legg-Perthes disease in her right hip.[23,24] At the age of seven, Caraway was

---

[20]SSA record at pp. 370-394.

[21]*Id.* at pp. 265-270, 272-276, 281, 285-291, 293-294, 337-339 & 351-352.

[22]*See Gwathney v. Chater*, 104 F.3d 1043, 1045 (8th cir. 1997) (failing to seek medical assistance for alleged physical and mental impairments contradicted claimant's allegations of disabling conditions and supported unfavorable decision); *Ostronski v. Chater*, 94 F.3d 413, 419 (8th Cir. 1996) (complaints of disabling pain and functional limitations are inconsistent with the failure to take prescription pain medication or to seek regular medical treatment for symptoms).

[23]Legg-Calvé-Perthes disease is a member of the osteochondrosis family of diseases. "Osteochondroses comprise group of diseases of children and adolescents in which localized tissue death (necrosis) occurs, usually followed by full regeneration of healthy bone tissue. . . . Osteochondrosis can affect different areas of the body and is often categorized by one of three locations: articular, non-articular, and physeal. . . . Articular disease occurs at the joints (articulations). One of the more common forms is Legg-Calvé-Perthes disease, occurring at the hip." Victor Leipzig, 4 *The Gale Encyclopedia of Med.* 3185 (4th ed).

[24]SSA record at p. 387.

placed in a brace.[25] Approximately a year and a half later the brace was removed, and radiology reports revealed that Caraway was healed.[26] Caraway's treating physician, however, noted that there was the possibility of early degenerative changes in the hip.[27] Further, he opined that Caraway would likely need a total hip replacement in the future.[28] The next record available with respect to Caraway's hip impairment is a July 2011 radiological report that reveals a deformity of Caraway's right femoral head and a narrowing of the right hip joint.[29] The report also noted, however, that the rest of the visualized bones showed no acute fracture, lytic or blastic changes, and the soft tissues were unremarkable.[30] These are the only medical records specifically addressing Caraway's hip impairment. In other records physicians observe that Caraway moves all extremities equally, has good strength, exhibits normal motor and sensory responses, and has a normal gait.[31]

There are only a few notes addressing Caraway's hypertension.[32] Although a March 19, 2010, record states that Caraway has experienced some dizziness, swelling and numbness, the

---

[25] *Id.*

[26] *Id.* at pp. 370 & 372.

[27] *Id.* at p. 372.

[28] *Id.*

[29] *Id.* at p. 300.

[30] *Id.*

[31] *Id.* at pp. 268, 270, 275 & 294.

[32] *Id.* at pp. 265, 270, 273, 337, 339 & 351.

note indicates that Caraway is in no acute distress and suffers from only mild hypertension.[33] Later notes establish that Caraway's blood pressure is good.[34] She is prescribed lisinopril, and still takes it today.[35] The medical records addressing Caraway's diabetes mellitus also indicate that Caraway is in no acute distress.[36] After the diabetes diagnosis, Caraway is prescribed metformin.[37] She remains on that prescription today, and the record is void of evidence of any acute effects from diabetes.[38] There is one treatment record with respect to Caraway's depression.[39] Although the physician determines that Caraway is suffering from moderately severe depression, he also observes that Caraway is in no acute distress, is pleasant, and does not appear sad or depressed.[40] Caraway is prescribed Cymbalta and still takes it today.[41] She has sought no further treatment for depression. Almost every medical record observes that Caraway is obese.[42] She is told on multiple occasions that she needs to lose weight, but remains obese.[43] There is nothing in the notes that indicate Caraway has work limitations due to her obesity.

---

[33]*Id.* at p. 270.

[34]*Id.* at pp. 339 & 351.

[35]*Id.* at pp. 53 & 275.

[36]*Id.* at pp. 265, 274, 337, 339 & 351.

[37]*Id.* at p. 275.

[38]*Id.* at p. 53.

[39]*Id.* at p. 351.

[40]*Id.*

[41]*Id.* at pp. 54 & 351.

[42]*Id.* at pp. 265, 270, 273, 293, 337, 339 & 351.

[43]*Id.* at pp. 268, 270, 273, 338, 342 & 352.

The treatment notes establish that Caraway was treated conservatively for her impairments. The only treatment for her hip impairment was a brace that was removed in 1987. For her other impairments, Caraway has consistently been treated with prescription medications. Although Caraway alleges disabling pain, she has only recently been prescribed a pain medication, and has had no invasive treatments. Conservative treatment has consistently been found to support denials of disability.[44]

The opinion evidence submitted by state agency physicians also supports the ALJ's RFC. In a June 2011 Disability Determination for Social Security Administration, General Physical Examination, a state agency physician determined that Caraway suffers from obesity, hypertension, diabetes, hip pain, knee pain and depression.[45] No limitations, however, were assessed.[46] In a July 2011 Physical Residual Functional Capacity Assessment, a state agency physician determined that Caraway can function at the sedentary exertion level.[47] This opinion was affirmed in November 2011.[48] A Mental Diagnostic Evaluation was completed in August 2011.[49] The state physician determined that Caraway suffers from depression, but also found that Caraway is able to communicate in a socially adequate manner, can communicate her needs effectively, can cope with mental and cognitive demands of work tasks, has good concentration,

---

[44]*See Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012); *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998).

[45]SSA record at p. 299.

[46]*Id.*

[47]*Id.* at p. 310.

[48]*Id.* at p. 346.

[49]*Id.* at p. 304.

is not easily distracted or inattentive, and has good task persistence.[50] Further, Caraway's mood was within normal limits; her affect was appropriate; her speech was normal; her thought processes were logical and coherent; there was no indication of delusional thinking, thought disorder or auditory or visual hallucinations; and she was attentive with memory intact.[51]

When viewed together with the treatment notes and state agency physician opinions, Caraway's Function Report provides additional support for the RFC determination. In the Function Report, Caraway indicates that during the day she watches television, reads, takes her daughter to school, cooks light suppers and does light housework.[52] Other than her husband shaving her legs for her, she is able to care for her personal needs.[53] She is able to drive and goes out alone.[54] She shops for groceries three times a week, for about twenty minutes each time.[55]

The medical opinion submitted to the Appeals Council is a Medical Source Statement completed by an osteopathic physician that Caraway met with only once.[56] In the Statement, the physician sets forth limits that, if true, prevent all work.[57] The physician opines that Caraway is not capable of sedentary work, can sit only one hour in an eight hour workday, cannot stand or

---

[50]*Id.* at pp. 306-07.

[51]*Id.* at pp. 305-06.

[52]*Id.* at p. 183.

[53]*Id.* at p. 184.

[54]*Id.* at p. 186.

[55]*Id.*

[56]*Id.* at p. 396.

[57]*Id.*

walk during an eight hour workday, and cannot lift or carry any weight, among other things.[58]

It is important first to emphasize that this physician would not be considered a treating source.

> Treating source means your own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an *ongoing treatment relationship* with you. Generally we will consider that you have an ongoing treatment relationship with an acceptable medical source when the medical evidence establishes that you see, or have seen, the source with a *frequency consistent with accepted medical practice* for the type of treatment and/or evaluation required for your medical condition(s). . . . We will not consider an acceptable medical source to be your treating source if your relationship with the source is not based on your medical need for treatment or evaluation, but *solely on your need to obtain a report in support of your claim for disability*. In such a case, we will consider the acceptable medical source to be a nontreating source.[59]

Given that Caraway saw this physician only once, and there are no treatment notes corresponding to the Medical Source Statement, the only conclusion is that Caraway sought this medical source to obtain a report in support of her claim for disability. Therefore, this opinion is not entitled to controlling weight. Additionally, the physician's opinion is inconsistent with the medical records discussed above.

Even in light of the additional Medical Source Statement, a reasonable mind would accept the evidence as adequate to support the ALJ's RFC. The RFC is supported by substantial evidence.

**Credibility determination.** Caraway further asserts that the ALJ erred in her determination that Caraway's allegations of pain and limitations are not supported by the record.

---

[58]*Id.* at pp. 396-402.

[59]20 C.F.R. §§ 404.1502 & 416.902 (emphasis added).

An ALJ must evaluate the claimant's credibility because subjective complaints play a role in determining the claimant's ability to work.[60] To evaluate Caraway's credibility, the ALJ followed the required two-step process and considered the required factors,[61] so the dispositive question is whether substantial evidence supports the credibility evaluation. The ALJ's determination that Caraway's subjective complaints of pain and limitations are not credible to the extent that they conflict with the assigned RFC is supported by substantial evidence.

As discussed above, the medical evidence available is incredibly limited. Although Caraway complains of disabling pain and limitations, evidence of such is not contained in the treatment notes. Further, the opinions of the state agency physicians conflict with Caraway's allegations. Such discrepancies support the ALJ's credibility determination.[62] Additionally, Caraway was advised on multiple occasions that she needed to lose weight. Losing weight would certainly positively impact Caraway's high blood pressure and diabetes. Caraway has lost very little weight throughout the course of her treatment. This also lends support to the ALJ's credibility determination.[63] A reasonable mind would accept the evidence as adequate to support the ALJ's credibility determination. Therefore, the credibility determination is supported by

---

[60]*See Ellis v. Barnhart*, 392 F.3d 988, 995-96 (8th Cir. 2005).

[61]*See* SSR 96-7p, *Policy Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

[62]*See Goodale v. Halter*, 257 F.3d 771, 774 (8th Cir. 2001) ("Subjective complaints may be discounted if there are inconsistencies in the evidence as a whole, and the ALJ may properly rely upon discrepancies between a claimant's allegations of pain and her treatment history, medicinal selections, and daily activities in disregarding her subjective complaints.") (internal quotations and citations omitted).

[63]*See Gulliams v. Barnhart*, 393 F.3d 798, 803 (8th Cir. 2005) ("A failure to follow a recommended course fo treatment also weighs against a claimant's credibility.").

substantial evidence.

**Conclusion.** Substantial evidence supports the ALJ's decision. The ALJ made no legal error. For these reasons, the court DENIES Caraway's request for relief (docket entry # 2) and AFFIRMS the Commissioner's decision.

It is so ordered this 15th day of September, 2014.

_____
UNITED STATES MAGISTRATE JUDGE